**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------

**TISHMAN CONSTRUCTION CORPORATION OF NEW YORK,**

             Plaintiff,        07 Civ. 888 (JGK)

    - against -          OPINION AND ORDER

**ANTHONY MUCCIOLI in his official capacity as President of PLUMBERS, STEAMFITTERS & APPRENTICES LOCAL UNION 21 and PLUMBERS, STEAMFITTERS & APPRENTICES LOCAL UNION 21,**

             Defendants.
-----------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Tishman Construction Corporation of New York ("Tishman") brings this action against the defendants, Plumbers, Steamfitters & Apprentices Local Union 21 ("Local 21"), and its President, Anthony Muccioli, to enjoin the defendants' effort to proceed to arbitration against Tishman. The action was originally filed in the New York State Supreme Court, New York County. The defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441 because the dispute arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Local 21 seeks to compel arbitration to settle a dispute involving whether it or the International Union of Operating Engineers, Local 137 ("Local 137") is entitled to perform the standby operation of permanent heating and cooling equipment at Yonkers Raceway. Tishman, the construction manager

1

for work on the Yonkers Raceway, claims that the dispute is jurisdictional and is not subject to arbitration under the terms of the Project Labor Agreement (the "PLA"). Tishman seeks (1) a declaration that the alleged jurisdictional dispute is not arbitrable before the American Arbitration Association ("AAA"); (2) a permanent injunction restraining such arbitration; and (3) the dismissal of Local 21's counterclaim that sought to compel arbitration of the dispute before the AAA. The arbitration has commenced but is voluntarily stayed pending the outcome of this action. Tishman has moved for summary judgment and Local 21 has cross moved for summary judgment on its counterclaim.

**I.**

**A.**

The following facts are not in dispute. Tishman and the Building and Construction Trades Council of Westchester and Putnam Counties (the "BCTC") and its Local Union affiliates are parties to a PLA dated August 24, 2005 covering construction work performed at Yonkers Raceway located in Yonkers, New York. (See Declaration of Aaron C. Schlesinger, dated July 26, 2007 ("Schlesinger Decl."), Ex. E.) As a union affiliate of the BCTC, Local 21 is party to the PLA. Paragraph 16 of the PLA specifies that the parties will attempt to submit general disputes under the agreement to an agreed upon neutral arbitrator, and in the event that parties cannot agree, to an

2

arbitrator on a list provided by the American Arbitration Association ("AAA"). (Schlesinger Decl., Ex. E at ¶16.) Paragraph 17 of the PLA specifically excludes jurisdictional disputes from the specified Dispute Resolution Procedure, including the arbitration procedures, and provides that jurisdictional disputes shall instead be governed by the Plan for the Settlement of Jurisdictional Disputes, referred by the union asserting a jurisdictional claim to the Building and Construction Trades Department, AFL-CIO, in Washington D.C. (the "BCTD"). (Schlesinger Decl., Ex E at ¶17.)

Local 21 filed a Notice of Intention to Arbitrate with the AAA pursuant to a letter dated January 11, 2007, citing Tishman's "failure to assign standby operation of permanent heating and cooling equipment at Yonkers Raceway to members of Local 21, in violation of the Project Labor Agreement. (Schlesinger Decl., Ex. F; Notice of Intention to Arbitrate attached to Petition as Ex. B.) Local 21 has identified ¶24 of the PLA as the pertinent section of the agreement that was allegedly violated by Tishman's action. (Schlesinger Decl., Ex E at ¶24.)[1] The parties subsequently agreed to stay the

---

[1] Paragraph 24 provides in relevant part: "The parties agree that no standby crews will be required on this Project unless requested by the employer at the employer's sole discretion.... The operation and connection of all piping and heating, cooling and air conditioning equipment installed by members of Plumbers and Steamfitters Local 21, shall be performed by members of Local 21 until the Construction Manager Transfers said equipment to the owner via a CO or a TCO."

3

arbitration before the AAA pending the outcome of the current action. (See Schlesinger Decl. ¶21.) All of the work performed on the Project at issue was completed by the end of February, 2007. (Schlesinger Decl. ¶26.)

The central dispute between the parties concerns whether this is a jurisdictional or a contractual dispute. Tishman argues that the underlying dispute is indisputably a jurisdictional issue and thus, pursuant to the clear terms of the PLA, Tishman is not obligated to arbitrate before the AAA. Local 21 argues that the dispute is not a jurisdictional dispute covered by the dispute resolution procedure specified in ¶17 of the PLA, but involves violation of specific contractual language in ¶24 of the PLA which assigns the specific work of standby operation of permanent heating and cooling equipment at Yonkers Raceway to Local 21. As a contractual dispute, Local 21 argues that it is covered by the arbitration clause contained in ¶16 of the PLA, which applies to "any dispute or disagreement relating to the application or interpretation of any provisions of this Agreement." Local 21 asserts that, in any event, the meaning of jurisdictional dispute under the contract is itself contested, and that the arbitrator is the proper body to determine whether the dispute is a jurisdictional dispute, not the Court.

**B.**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994).

**II.**

**A.**

Arbitration is a subject of agreement among the parties and the issue of whether the parties agreed to submit a dispute to arbitration is a matter for the Court to decide, unless the parties clearly and unmistakably demonstrate otherwise. See AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 649 (1986). Courts have also found that if the parties agreed that jurisdictional disputes are not to be submitted to arbitration, the courts will honor that agreement. See Bechtel

6

Corp. v. Local 215, Laborers' Int'l Union of North America, AFL-CIO, 544 F.2d 1207, 1214 (3d Cir. 1976) ("Just as it is the duty of the courts to enforce an agreement of labor and management to arbitrate certain disputes, the same policy considerations require that courts also respect an agreement between management and unions to submit jurisdictional disputes to the specific settlement agency designated by them for that purpose.")  A jurisdictional dispute is commonly defined as a dispute "between two or more groups of employees over which is entitled to do certain work for the employer." NLRB v. Radio & Television Broadcast Engineers Union, 364 U.S. 573, 579 (1961).  Such disputes typically involve a dispute between two unions with the employer caught in the middle.  Bechtel, 544 F.2d at 1214.

**B.**

Paragraph 17 of the PLA specifies, in relevant part: "The Dispute Resolution Procedure including the arbitration procedures contained therein shall not apply to a jurisdictional dispute, which shall be governed by the Plan for the Settlement of Jurisdictional Disputes and shall be referred by the Union asserting a jurisdictional claim to the Building and Construction Trade Department, AFL-CIO, Washington, D.C." (Schlesinger Decl., Ex. E at ¶17.) Local 21 argues that the current dispute is not the kind of jurisdictional dispute that the parties intended to be decided by referral to the BCTD under

7

¶ 17 of the PLA. While the classic jurisdictional dispute involves competing claims of right pursuant to more than one contract, Local 21 points out that here there is only one PLA to which all of the parties are bound. Local 21 further argues that, unlike a typical jurisdictional dispute where competing claims to work arise in the absence of any specific PLA provision, the specific language in ¶24 governs the assignment of heating and cooling work that is disputed. Therefore, according to Local 21, this dispute, rather than being jurisdictional, is a "dispute or disagreement relating to the application or interpretation of any provisions" of the PLA, which is to be resolved through arbitration pursuant to ¶16 of the PLA, which provides "In the event of any dispute of disagreement relating to the application or interpretation of any provisions of this Agreement…" the specified arbitration process "shall apply for the resolution of said dispute or disagreements." (Schlesinger Decl., Ex. E at ¶16.)

Local 21's attempts to carve out an exception to the definition of "jurisdictional dispute" are unconvincing. The dispute at issue is whether Local 21 or Local 137 is entitled to perform the standby operation of permanent heating and cooling equipment work at Yonkers Raceway. This is plainly a dispute between two unions over the assignment of work, and fits into the classic definition of "jurisdictional dispute." See NLRB v.

8

Radio & Television Broadcast Engineers Union, 364 U.S. at 579. Local 21 attempts to distinguish the cases involving jurisdictional disputes without offering any case that provides a narrower definition of jurisdictional dispute.

The parties specifically took one set of possible disputes between unions, ¶¶14 and 29, and subjected them to arbitration. Paragraphs 14 and 29 relate to the assignment of specific jobs to specific unions and ¶30 specifically provides that violations in those paragraphs will be resolved in accordance with ¶16 subject to certain limitations on the arbitrator's authority. Plainly, when the parties sought to have a jurisdictional dispute subjected to the dispute resolution mechanism of ¶16, including arbitration, they specifically provided for that. The PLA did not except ¶24 from ¶17 which specifically provided that jurisdictional disputes were not to be submitted to arbitration. If the parties had intended to include ¶24 as an exception to the jurisdictional dispute carveout, they could have provided, as they did with ¶¶14 and 29, that a violation of ¶24 was subject to ¶16. The parties failed to do so.

Local 21 relies on the negotiating history of the "standby work" provision to argue that the parties had intended that the provision would not be subject to the jurisdictional carve out, and that the parties had attempted to make the distribution of work clear. But even if the parties had intended to make the

9

distribution of work clear, disputes between unions as to who should perform such work were clearly contemplated by ¶17 of the agreement to be decided by the BCTD.  The negotiation history goes to the merits of which union should do the work rather than a determination of who should decide the merits of the dispute.

Finally, Local 21 concedes in its final reply brief that it does not contend that the dispute is not a jurisdictional dispute, generally speaking, but that the grievance is not a jurisdictional dispute within the meaning of ¶17 of the PLA, of the sort that the parties intended to exclude from arbitration under ¶16.  Having conceded that the dispute is a jurisdictional dispute, without offering support for the proposition that the parties intended to exclude the type of jurisdictional dispute at issue in the current petition, Local 21 is unable to avoid the plain language of ¶17.  The Court should not read in an exception that does not exist in the agreement.

C.

Finally, Local 21's contention that the dispute as to the interpretation of "jurisdictional dispute" should be decided by the arbitrator and not the Court is unavailing. <u>Huber, Hunt & Nichols, Inc. v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38</u>, 282 F. 3d 746 (9th Cir. 2002), cited by the defendants, concerned an agreement that consigned all questions concerning the application or

interpretation of the Agreement "excluding jurisdictional disputes" to the permanent arbitrator, and the Court of Appeals for the Ninth Circuit found that the agreement was "implicitly assigning to [the arbitrator] the threshold determination whether a dispute is jurisdictional." Id. at 750. In this case, the jurisdictional carve out is not included within a broad arbitration clause, but in an entirely separate paragraph, which reads "The Dispute Resolution Procedure including the arbitration procedures contained therein shall not apply to a jurisdictional dispute…" Moreover, the Court of Appeals for the Second Circuit has made clear that the issue of whether the parties intended to have the definition of a jurisdictional dispute submitted to an arbitrator turns on the language of the contract itself. See Cleveland Wrecking Co. v. Iron Workers Local 40, 136 F.3d 884, 888 (2d Cir. 1997) (per curiam).

In this case, the defendants do not mount a meaningful challenge to whether this is a jurisdictional dispute at all in light of their concession in the final reply brief that this is a jurisdictional dispute. Therefore, in the absence of explicit language assigning the issue of arbitrability to an arbitrator, it is for this Court to decide the issue of arbitrability. See AT&T Technologies, 475 U.S. 643 (1986), Alliance Bernstein Inv. Research and Mgmt. v. Schaffran, 445 F.3d 121, 125 (2d. Cir. 2006). The Court concludes that pursuant to the plain language

of ¶17 of the PLA, the current dispute is excluded from the arbitration provision of ¶16 of the PLA because it is a jurisdictional dispute, and the appropriate forum to decide the dispute is the BCTD.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is **granted,** and the defendants are enjoined from compelling arbitration in this matter. The defendants' cross motion for summary judgment is **denied.** The defendants' counterclaim to compel arbitration is dismissed. The plaintiff is directed to submit a proposed judgment within three days. The defendants may submit any counter proposal two days thereafter.

**SO ORDERED.**

Dated: New York, New York
February 15, 2008

John G. Koeltl
United States District Judge